UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT GLEN HILL,

        Petitioner,

vs.                                 Case No. 3:19-cv-408-BJD-PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

## I.  STATUS

Petitioner Robert Glen Hill is proceeding on a pro se Amended Petition (Petition) (Doc. 8) pursuant to 28 U.S.C. § 2254.   He is challenging his state court (Duval County) conviction for false verification to a pawn broker. Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 14).   Petitioner filed a Reply (Reply) (Doc. 15).[1]

_____

[1] Respondents filed an Appendix (Doc. 14).   The Court hereinafter refers to the exhibits contained in the Appendix as "Ex."   The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.   Otherwise, the page number on the document will be referenced.   For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

## II.   EVIDENTIARY HEARING

Petitioner is not entitled to an evidentiary hearing.   "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."   Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020).   See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same). Here, Petitioner has not met his burden.

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   Martin, 949 F.3d at 670 (quotation and citation omitted).   In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately   assess   [Petitioner's]   claim[s]   without   further   factual

2

development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).   The Court finds Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief.   As such, the Court finds Petitioner is not entitled to an evidentiary hearing.   <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

### III.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   <u>Lee v. GDCP Warden</u>, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).   Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits.   <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").   It is well understood that relief is limited to occasions where the state court's decision:

3

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.

This is a high hurdle, not easily surmounted. If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)). Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's

factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   <u>Dallas v. Warden</u>, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015)), <u>petition for cert. filed</u>, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   <u>Id</u>. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."   <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

5

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises one ground claiming the ineffective assistance of trial counsel.   Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"   Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).   As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

## V.   EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend grounds one, two, and four are unexhausted and procedurally defaulted.   Response at 16-19, 21-23, 30-32.   Petitioner raised these grounds in an Amended Rule 3.850 motion.   Ex. P at 11-17.   Notably, Petitioner was granted leave to amend his original Rule 3.850 motion after the circuit court found Petitioner's claims insufficiently pled.   Id. at 8-10.   Thus,

Petitioner was given an opportunity to cure the deficiencies of his original motion.

In its Order Denying Defendant's Amended Motion for Postconviction Relief, the circuit court held the claims were conclusory, lacking the necessary detail and supporting documentation to support the allegations.  Id. at 101. The court further found Petitioner failed to rectify the deficiencies of the original motion.  Id.  Thus, the court concluded Petitioner had been given an opportunity to amend the motion and no further opportunity need be provided. Id.  As such, the court denied post-conviction relief.  The 1st DCA affirmed. Ex. R.

Respondents contend that the circuit court did not address the merits of these three grounds, finding the grounds were conclusory and insufficiently pled.  Response at 16, 22, 30.  As such, Respondents submit the claims are unexhausted and procedurally defaulted.  The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state

court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 908 n.9 (11th

---

2  <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

3  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Cir. 2009) (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert. denied</u>, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman</u>, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir.), <u>cert. denied</u>, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324), <u>cert. denied</u>, 569 U.S. 1004 (2013).

The record shows that, although given the opportunity, Petitioner failed to cure the insufficiencies of the claims within the time allowed by the state court.   Ex. P at 101.   The state court did not address the merits of these grounds finding them deficiently pled.   Petitioner cannot return to the state court to exhaust these claims; therefore, he has procedurally defaulted these grounds for relief.   He has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach merits of grounds one, two, and four of the Amended Petition.

In the alternative, the Court finds Petitioner is not entitled to habeas relief on grounds one, two, and four of the Amended Petition.[4]   In addition, he is not entitled to relief on ground three of the Amended Petition.   A discussion addressing all four grounds follows.

## VI.   GROUND ONE

In ground one of the Petition, Petitioner claims his verdict was rendered by an impartial juror, Mr. Blackburn, who replaced Dr. Blecha without examination.   Petition at 5.   The record shows, during jury selection, questions were asked of Dr. Richard Blecha.   Ex. C at 20, 41.   Ultimately, the panel consisted of Dr. Blecha, Pamela Perkins, Marilyn Kalena-Larrison,

---

[4] The Court recognizes Petitioner attempted to present grounds one, two, and four in the state court system and he proceeded without counsel in the post-conviction proceeding.

William Gary, Karen Muse, Ronald Bowens, and Kalena Mays [alternate].   Id.
at 183.   The Clerk's Memorandum of Trial lists the following jurors:   1 Mr.
Blecha; 2 Ms. Perkins; 3 Ms. Kalena-Larrison; 4 Mr. Gary; 5 Ms. Muse; 6 Mr.
Bowens; and 7 Ms. Mays (Alt).   Ex. U.

The only instance in the record in which the name "Mr. Blackburn"
appears is that portion of the record concerning the polling of the jurors.   Ex.
D at 452.   After the defense requested the jury be polled, the court asked the
clerk to poll the jury:

> THE CLERK:   **Mr. Blackburn**, are these your
> verdict – are these your true and correct verdicts?

> THE JUROR:   Yes.

> THE CLERK:   Ms. Perkins, are these your true
> and correct verdicts?

> THE JUROR:   Yes.

> THE CLERK:   **Mr. [sic] Calena Larson [sic]**,
> are these your true and correct verdicts?

> THE JUROR:   Yes.

> THE CLERK:   **Mr. [sic] Muse**, are these your
> true and correct verdicts?

> THE JUROR:   Yes.

> THE CLERK:   Mr. Gary, are these your true
> and correct verdicts?

11

> THE JUROR:   Yes.
>
> THE CLERK:   Mr. Bowens, are these your true
> and correct verdicts?
>
> THE JUROR:   Yes.

Ex. D at 452-53 (emphasis added).

Upon review, this is, at most, a clerk's mere misstatement of the juror's name during polling or a court reporter's scrivener's error in documenting the proceeding.[5]   The record shows Dr. Blecha was on the panel and the clerk's trial memorandum demonstrates the jury was empaneled and sworn and the following jurors rendered a verdict: Mr. Blecha, Ms. Perkins, Ms. Kalena-Larrison, Mr. Gary, Ms. Muse, and Mr. Bowens.   There is no evidence in the record that a Mr. Blackburn replaced Dr. Blecha.   Again, either the clerk misspoke during the proceeding or the court reporter simply made a scrivener's error or misheard the name called out by the clerk.

There is no evidence of actual impartiality on the part of a juror as Petitioner has not demonstrated that any juror was unable to put aside any bias and return a verdict based on the evidence and the law.   Indeed,

---

[5] Apparently, the court reporter had some difficulty accurately hearing/transcribing the names and gender of some of the panel members during this portion of the proceeding as there are a few inaccuracies reflected in this section of the trial transcript. The reporter referred to Ms. Kalena-Larrison, one of the jurors, as "Mr. Calena Larson" and to Ms. Muse, another juror, as "Mr. Muse."   These apparent scrivener's errors or errors on the part of the clerk are inconsequential.

Petitioner has failed to show an allegedly biased juror, a "Mr. Blackburn" served on the panel.   Thus, Petitioner's claim of impartiality is due to be denied.

## VII.   GROUND TWO

In his second ground for relief, Petitioner complains that he was mis-identified at trial as a black male when he is a white male.   Petition at 7.   The record demonstrates that Detective Carol Austin McKinnon, when asked if she could recognize the defendant after encountering him during her capacity as serving as a detective in August of 2013, said she could and referred to the defendant as the person sitting at the defense table, "wearing glasses, black male with a gray suit."[6]   Ex. D at 273.   The prosecutor asked that the record show that the witness had identified the defendant, and the court did so.   Id. Defense counsel made no objection.

The Arrest and Booking Report shows Detective McKinnon, the arresting officer, conducted the interview of Petitioner, and the report reflects that Petitioner is a white male.   Ex. A at 1-5.   Therefore, at most, Detective McKinnon misspoke at the trial when she described Petitioner as the black

---

[6] Officer Thomas E. Howell, the latent fingerprint examiner who testified at trial, identified the defendant, describing him as the gentleman at the far table wearing a pair of black and silver glasses and "kind of like a blue shirt with like a gray suit and yellow, and it looks like a blue and red tie."   Ex. D at 321.   The court stated the record should reflect that the witness identified the defendant.   Id.

male in the gray suit at the defense table.   Notably, the defense table would have included two women, Samantha Smart and Belkis Plata, the attorneys who represented Petitioner at trial.   Ex. D at 190.

Again, this is an instance where the witness misspoke, or the transcriptionist made a scrivener's error and wrote "black" instead of "white." There is clear record evidence that Petitioner is a white male who submitted his fingerprints and identification to the pawn shop.   Ex. A at 87-89.   The state introduced this evidence to the jury.   Ex. D at 306-311.   Ms. Samantha Lyle, the manager of Gold & Coin Shop attested that when Petitioner presented his driver's license photo, she looked at him and confirmed he was the person on the driver's license and was the person in front of her.   <u>Id</u>. at 312.   Additionally, she identified Petitioner in the courtroom by pointing him out as the male wearing a gray suit.   <u>Id</u>   The court directed that the record show Petitioner had been identified by Ms. Lyle.   <u>Id</u>.

To the extent Petitioner is claiming he was deprived of a fair trial, he has not adequately supported a claim of deprivation of due process of law pursuant to the Fourteenth Amendment to the United States Constitution.   "Cases in [the United States Supreme Court] have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."   <u>Spencer v. State of Tex.</u>, 385 U.S. 554, 563-64 (1967).   The

Fifth Amendment provides: "[no person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.   The Fourteenth Amendment provides any state shall not deprive any person of life, liberty, or property, without due process of law.   U.S. Const. amend. 14.   The Fifth Amendment's due process protection applies to the states by virtue of the Fourteenth Amendment.   U.S. Const. amends. 5, 14.

This Court has thoroughly reviewed the record.   It demonstrates Petitioner received fair process in the state court proceeding and is not entitled to habeas relief on a deprivation of due process claim.   Detective McKinnon stated she recognized Petitioner and said he was seated at the defense table, wearing glasses and a gray suit.   Ex. D at 273.   She either erred in describing Petitioner to the jury or the transcriptionist erred in recording Detective McKinnon's testimony.   The error went uncontested at the proceeding. There is other very significant evidence in the record that Petitioner was the person who took the two items into the pawn shop, signed the Florida Pawnbroker Transaction Form, and provided fingerprints and the identification card to the pawnshop manager.   Officer Howell attested that the fingerprint on the original pawn transaction form matched that of Robert Hill.   Id. at 322.   Ms. Lyle testified Petitioner was the person who stood

before her in the pawn shop, presented the identification card, and signed the form.[7]

Petitioner has failed to support a claim of constitutional dimension.   He was not deprived of fundamental fairness in his criminal trial.   Consequently, ground two is due to be denied.

## VIII.   GROUND THREE

In his third ground for relief, Petitioner claims he was wrongly sentenced as a habitual felony offender as the state failed to show he qualified as a habitual felony offender.   Petition at 8.   In support, he contends that the state failed to provide properly certified documents for predicate case no. 2000-CF-013065 (burglary of a structure from Hillsborough County, Florida) resulting in his being wrongly sentenced to "a 5 year enhanced sentence."   Id.

The circuit court addressed the merits of this claim in denying Petitioner's amended Rule 3.850 motion.   Ex. P at 101-102.   The court held:

> As to any allegation that his HFO sentence is illegal, this Court also finds such claim to be erroneous.   On April 10, 2014, the State filed its Second Amended Notice of Intent to Classify Defendant as a Habitual Felony Offender, listing two predicate felonies:   an April 26, 2010, prior conviction for Driving While License Suspended or Revoked and an April 10, 2001, prior conviction for Burglary to

---

[7] "Overwhelming eyewitness testimony is internally consistent[.]" <u>Rivas v. United States</u>, No. 8:07-cv-22-T-17TGW, 8:01-CR-212-T-17TGW, 2007 WL 2154194, at *4 (M.D. Fla. July 24, 2007) (not reported in F.Supp.2d).

> Structure.  (Ex. F.)  At the sentencing hearing, the State submitted the judgment and sentences of these two prior felony convictions as exhibits and a fingerprint analyst certified these prior felonies. (Exs. G; H at 6-7; 10-20.)  Thereafter, the trial court adjudicated Defendant, on the record, as an HFO. (Ex. H at 25-26.)  This Court further notes Defendant has previously attacked his HFO sentence in a rule 3.800(a) motion.  (Ex. I.)  On August 11, 2016, this Court denied said motion and the First District Court of Appeal affirmed this Court's denial through a Mandate issued on November 26, 2016.  (Exs. J; K.)  As such, Defendant's claims regarding his HFO sentence are denied.

Ex. P at 101-102.  The First District Court of Appeal (1st DCA) affirmed per curiam.  Ex. R.  The mandate issued on October 15, 2018.  Id.

The Court finds the state court's determination is consistent with federal precedent.  The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.  Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.  In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts based on the evidence presented.  Therefore, this claim is due to be denied.

17

The record shows the following.   The state, on December 20, 2013, filed a Notice of Intent to Classify Defendant as an Habitual Felony Offender.   Ex. A at 26.   Thereafter, on January 22, 2014, the state filed an Amended Notice of Intent to Classify Defendant as an Habitual Felony Offender.   Id. at 28. On April 8, 2014, the state filed another Amended Notice of Intent to Classify Defendant as a Habitual Felony Offender.   Id. at 97.   Finally, on April 10, 2014, the state filed a "Second Amended Notice of Intent to Classify Defendant as a Habitual Felony Offender" with a handwritten modification of the date of the second felony, a Hillsborough County conviction for burglary of a structure, on April 10, 2001 (case no. 2000-CF-13065).[8]   Id. at 110.   The state, on April 10, 2014, filed a composite exhibit and a certified disposition packet for the Hillsborough County cases, case no. 2010-CF-000131 (driving while license suspended or revoked, habitual traffic offender status) and case no. 2000-CF-13065 (burglary of a structure).   Id. at 112-27.

The court conducted a sentencing proceeding on April 10, 2014.   Ex. A at 171-206.   Officer Shilonda Adams of the Jacksonville Sheriff's Office attested that the judgments and sentences are certified judgments and sentences.   Id. at 182-83.   She testified case number 2010-CF-131 has a

---

[8] This amendment was made without objection.   Ex. A at 193.

certification on it but the other case, case number 2000-CF-13065, "has certification on the original package of it." Id. at 183. The court credited Ms. Adams' testimony and accepted her testimony of adequate certification of the documents. Id. at 189.

The court found the convictions were qualifying felonies, they occurred on separate dates, that one or both of the convictions, or release therefrom, were within five years of the offense for which Petitioner was being sentenced, Petitioner had not received a pardon for either offense, neither offense had been set aside in any post-conviction proceeding, and none of the offenses concerned drug possession. Id. at 195. The court found by a preponderance of the evidence that Petitioner met the criteria to be classified an habitual felony offender. Id. at 196. The court further found Petitioner is a danger to the community and it is necessary for the protection of the public to sentence him as an habitual offender. Id.

At sentencing, the state argued Petitioner is a twenty-time convicted felon. Id. at 201. The state noted Petitioner has been a felon since 1993. Id. at 202. The state said Petitioner's record shows he has been convicted of "crimes of dishonesty and endangering the streets of Jacksonville by continuing to drive while his license has been suspended or revoked[.]" Id. After hearing argument, the court adjudicated Petitioner guilty and sentenced

him to ten years in prison as an habitual felony offender.  Id. at 205.  See Ex. A at 98-104, Judgment and Sentence.

Petitioner filed a Motion to Correct Illegal Sentence pursuant to Rule 3.800(a), Fla. R. Crim. P.  Ex. M at 1-5.  The circuit court denied the motion, finding the trial court complied with the procedure set forth in the habitual offender statute, counsel stipulated to the amendment during the sentencing, the felonies in the state's notice comply with the statute, and the trial court properly adhered to the statute in relying on the 2010 offense.  The 1st DCA affirmed per curiam.  Ex. O.  The mandate issued on November 29, 2016. Id.

The record refutes Petitioner's claim that he was improperly sentenced to a habitual offender sentence.  The state filed the appropriate notices and Petitioner received the notices.  At sentencing, the court relied on two qualifying felonies.  The court determined they were qualifying felonies, they occurred on separate dates, and that one or both of the convictions or release therefrom, was within five years of the current offense.  In short, the court found Petitioner met the criteria to be classified as an habitual felony offender.

The documents are in the record.  Testimony supported the court's conclusion that the judgments and sentences were certified and properly relied upon.  The record shows the qualifying prior felony convictions existed and

Petitioner did not adequately contest the convictions to show otherwise. Neither side had information that Petitioner had received a pardon for either prior offense or that either offense had been set aside in any post-conviction proceeding.   Based on all of these factors, the trial court properly classified Petitioner as an habitual felony offender and he is not entitled to habeas relief.

Alternatively, the Court finds this claim presents an issue purely of state law that is not cognizable on federal habeas review.   It involves a statutory interpretation of state law by state courts, not a claim of constitutional dimension that Petitioner is in custody in violation of the Constitution or law or treaties of the United States.   28 U.S.C. § 2254(a).   Of import, the writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights."   Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam)), cert. denied, 531 U.S. 1170 (2001).

The law in the Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available.   See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).   Consequently, federal habeas relief does not lie for errors of state law.   It is certainly not the province of this Court to reexamine state-court determinations on issues of state law. See Estelle v.

McGuire, 502 U.S. 62, 67-68 (1991).   "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"   Branan v. Booth, 861 F.2d at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

As the Eleventh Circuit has instructed, "state law is what the state courts say it is."   Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017), cert. denied, 139 S. Ct. 193 (2018).   Indeed, "it is not a federal court's role to examine the propriety of a state court's determination of state law."   Id. Therefore, this Court will not reexamine state-court determinations on state-law questions.   As such, a federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.   McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992). Since Petitioner's claim raised in ground three presents an issue that is not cognizable in this habeas proceeding, it cannot provide a basis for federal habeas corpus relief.   Furthermore, the Court finds there is no breach of a federal constitution mandate and Petitioner is not entitled to federal habeas relief.

## IX.   GROUND FOUR

Petitioner, in his fourth ground for relief, claims he received the ineffective assistance of counsel based on counsel's failure to adequately fight on behalf of Petitioner, including failing to object to the change from juror Blecha to juror Blackburn, failing to object when a witness described him as black, and failing to object to Petitioner being found a danger to the public at sentencing.

The record does not support Petitioner's contention that juror Blecha was replaced by Mr. Blackburn during the trial.   Upon review, there is no record evidence of juror replacement and this claim is wholly unsupported. Therefore, counsel was not ineffective for failure to object.   Counsel need not make a meritless objection that would not have obtained relief.   Brewster v. Hetzel, 913 F.3d 1042, 1056 911th Cir. 2019).   Counsel's performance did not fall outside the range of reasonably professional assistance.   In addition, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained.

Although Detective McKinnon may have mis-spoke and described Petitioner as a black male, Detective McKinnon said she recognized Petitioner and signified he was the male, wearing glasses, in the gray suit, seated at the

defense table.   The trial court accepted the Detective's identification of Petitioner.   Detective McKinnon also accurately recorded that Petitioner was a white male on the Arrest and Booking Report.   The Florida Pawnbroker Transaction Form shows Petitioner is a white male.   Ex. A at 87.   An objection to the mischaracterization that Petitioner was a black male may have been sustained if that was what Detective McKinnon said and not just a mistake in the transcription by the court reporter, but it would have made no difference as the statement did not prejudice Petitioner.   Petitioner's photograph and fingerprint were on the pawnbroker transaction form and Ms. Lyle, an employee of the pawnshop, positively identified Petitioner as the person who signed the pawn transaction form and pawned the guitar and keyboard.

As noted by Respondents, this mistake, if one was made by Detective McKinnon, would not have adequately supported a motion for judgment of acquittal.   Response at 34.   The jury weighed the Detective's in-court identification when making its decision.   Also, Detective McKinnon was not a witness to the offense itself; she interviewed the suspect.   As there was other stronger evidence of identification at trial, this apparent mistake had no significant bearing on the jury's decision.

Otherwise, if this is a mistake made during transcription, counsel would not have had an opportunity to object as this type of error would have occurred after the trial. Therefore, the Court concludes counsel did not perform deficiently.

Under these circumstances, counsel cannot be deemed deficient for failing to object or take any other actions suggested by Petitioner. Furthermore, there is no reasonable probability that the outcome of the case would have been different if defense counsel had taken the action suggested by Petitioner.

With respect to sentencing, Petitioner claims his counsel performed deficiently for failure to object to the trial court's finding he was a danger to the community and it was necessary for the protection of the public to sentence Petitioner as an habitual offender. Ex. M at 51. The record demonstrates Petitioner was an habitual felony offender. He had an abysmal criminal record, with twenty prior felony convictions and multiple misdemeanor convictions. Ex. A at 105. The state argued Petitioner presented a danger to the community based on his driving record, driving while his license had been suspended or revoked. Id. at 202.

The state court found Petitioner qualified as an habitual felony offender, he was a danger to the community, and he should be adjudicated guilty and

sentenced as an habitual felony offender.   The state court's interpretation of state law is binding upon this Court.   "This Court cannot therefore overturn the state court's determination of state law, even if its determination is intertwined with an ineffective assistance of counsel claim under the Sixth Amendment."   Devers-Division v. Sec'y, Dep't of Corr., No. 8:14-cv-388-KKM-JSS, 2021 WL 2581609, at *7 (M.D. Fla. June 23, 2021).

Petitioner has not satisfied the two-pronged Strickland standard.   As the threshold standard has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Petitioner has failed to demonstrate either a Sixth or Fourteenth Amendment violation under the Unite States Constitution.   Therefore, ground four is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition for Writ of Habeas Corpus (Doc. 8) is **DENIED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.   The **Clerk** shall enter judgment accordingly and close this case.

26

4.     If Petitioner appeals the denial of his Amended Petition (Doc. 8),

**the Court denies a certificate of appealability**.[9]   Because this Court has

determined that a certificate of appealability is not warranted, the **Clerk** shall

terminate from the pending motions report any motion to proceed on appeal as

a pauper that may be filed in this case.   Such termination shall serve as a

denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of

August, 2021.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/11
c:
Robert Glen Hill
Counsel of Record

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.